IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARMEN KROWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. SA-15-CA-0638-RP |
| | § | |
| THE UNIVERSITY OF THE INCARNATE | § | |
| WORD, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant The University of the Incarnate Word ("UIW") and files this its Motion for Summary Judgment and would show unto to the Court as follows:

## I.    INTRODUCTION

Plaintiff Carmen Krowell ("Krowell" or "Plaintiff") alleges various causes of action under Titles VI and VII of the Civil Rights Act of 1964 and the Age Discrimination Act of 1975 (the "Age Act") against UIW.  The sole factual basis for all of Plaintiff's causes of action is her failure to gain admission to UIW's Master of Hospital Administration degree program.

UIW is entitled to summary judgment with respect to all of Plaintiff's claims because there are no genuine issues of material fact.  Specifically, Plaintiff has failed entirely to establish a *prima facie* case of discrimination under Title VI or Title VII.  In addition, Plaintiff has failed to exhaust her administrative remedies under the Age Act by failing to provide the notice of suit required by the statute.  As such, UIW is entitled to summary judgment on each of Plaintiff's claims as a matter of law.

## II.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); FED. R. CIV. P. 56(c).  Summary judgment is warranted if a plaintiff fails to make a showing sufficient to establish the existence of an element that is essential to her case. *See Celotex*, 477 U.S. at 322.  "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted).

Unsubstantiated assertions and opinions are never competent summary judgment evidence.  *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  "[M]ere conclusory allegations" are also "insufficient to defeat . . . a motion for summary judgment."  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(e).  In other words, a nonmovant must do more than show some theoretical doubt as to the material facts to defeat a motion for summary judgment.  *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Instead, she must produce evidence upon which a jury reasonably could base a verdict in her favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Particularly, the nonmovant must produce, through competent evidence, specific facts showing that there remains a genuine issue for trial.  *Matsushita Elec.*, 475 U.S. at 586-87; *see also Celotex*, 477 U.S. at 324 (recognizing that the nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial"); *Garcia v. Elf Atochem North*

*America*, 28 F.3d 446, 449 (5th Cir. 1994).  Because Plaintiff fails in meeting this burden, summary judgment is mandated.

## II.  RELEVANT FACTS

### A.  Plaintiff's Military Career

Plaintiff is currently a Master Sergeant in the U.S. Air Force Reserves and serves as an Aviations Resource Manager stationed at Joint Base San Antonio - Lackland.  *See* Exhibit 1, Krowell Depo., p. 12.  She was born in Medellin, Columbia, becoming a United States citizen during her Air Force career which began in 1981, and is over the age of 40.  *See* Exhibit 1, Krowell Depo., pp. 16-19.  Sometime after 2009, Plaintiff was deployed to Afghanistan which entitled her to certain educational benefits.  *See* Exhibit 1, Krowell Depo., p. 53.  Although she has done some volunteer work at hospitals, consisting mainly of calling patients to ensure that they will attend their appointments as scheduled, she has never worked in a healthcare setting. *See* Exhibit 1, Krowell Depo., pp. 47-48.

To take advantage of the military educational benefits, Plaintiff applied for admission to UIW's H-E-B School of Business and Administration seeking a Master of Health Administration ("MHA") degree on April 25, 2014.  *See* Exhibit 1, Krowell Depo., pp. 29, 54; Exhibit 2, Application for Admission dated Apr. 25, 2014; Exhibit 3, Declaration of Dr. Dominquez.  The MHA program is a 21 month, 45-hour program designed for individuals seeking career positions within the healthcare industry.  *See* Exhibit 3, Declaration of Dr. Dominquez.  The MHA program employs an experiential learning model under which students are placed in positions with healthcare organizations to gain real-world experience.  *See* Exhibit 3, Declaration of Dr. Dominquez.  In addition, as part of the application process, applicants are asked to provide a statement of purpose discussing their professional background and goals in seeking admission to the MHA program, which Plaintiff did on May 14, 2014.  *See* Exhibit 3, Declaration of

Dr. Dominquez; Exhibit 1, Krowell Depo., pp. 77-78; Exhibit 4, Email from Plaintiff dated May 14, 2014.  The MHA program is highly competitive, and many quality applicants are denied admission because of its competitive nature.  *See* Exhibit 3, Declaration of Dr. Dominquez.

On June 3, 2014, Dr. Daniel Dominguez (UIW's Director, Graduate Program in Health Administration) and Dr. Kevin LaFrance[1] (Professor, UIW's H-E-B School of Business and Administration) interviewed Plaintiff concerning her application.  *See* Exhibit 5, Email Chain dated May 29, 2014.  At no time during that interview did either Dr. Dominguez or Dr. LaFrance make any comments about Plaintiff's age, race, national origin, gender, or religion.  *See* Exhibit 1, Krowell Depo., pp. 122-23.

On July 17, 2014, Plaintiff was notified that her application to the MHA program was denied.  *See* Exhibit 1, Krowell Depo., p. 41; Exhibit 6, Letter from UIW dated July 17, 2014.  Plaintiff sought an explanation for the denial, and on August 29, 2014, Dr. Dominguez provided that explanation.  Dr. Dominguez explained that the MHA program is highly competitive and that the Admissions Committee felt that Plaintiff's application was "not as strong as some of the others [UIW] received."  *See* Exhibit 7, Email from Dr. Dominquez dated Aug. 29, 2014.

That same day, Plaintiff filed a complaint against UIW with the Office of Civil Rights of the U.S. Department of Education ("OCR") alleging discrimination on the bases of age, national origin, and sex.[2]  Plaintiff, however, never provided any additional documents to support her allegations against UIW.  On January 26, 2015, the OCR informed Plaintiff that she had "not provided sufficient factual detail for OCR to infer that age, national origin, and/or sex

---

[1] Of note, Dr. LaFrance has over twenty-five (25) years of experience as a healthcare administrator in the U.S. Army holding positions of CFO and COO in clinic and hospital settings.  *See* Exhibit 3, Declaration of Dr. Dominquez.

[2] In addition to the OCR complaint, Plaintiff also filed complaints with the Veterans Administration and H-E-B regarding UIW.  Nothing came out of any of these complaints.

discrimination has occurred or is occurring." *See* Exhibit 1, Krowell Depo., pp. 109-10; Exhibit 8, Letter from OCR dated Jan. 26, 2015.

In the intervening months, it became clear that a degree in Hospital Administration was no longer Plaintiff's focus. Instead, Plaintiff developed an interest in childhood education. To further her pursuit of that interest and to take advantage of her remaining educational benefits, on March 17, 2015, Plaintiff applied for admission to UTSA's Graduate Program, seeking a Master's degree in Early Childhood Education. *See* Exhibit 1, Krowell Depo., pp. 26, 125; Exhibit 9, UTSA Graduate School Application dated Mar. 17, 2015. Plaintiff was accepted into that program on April 20, 2015, and currently expects to graduate in December 2017. *See* Exhibit 1, Krowell Depo., p. 27; Exhibit 10, Letter form UTSA dated Apr. 20, 2015. Her goal now is to go into the teaching field, likely at a community college first and then at the university level after she earns a Ph.D. *See* Exhibit 1, Krowell Depo., p. 28.

## IV.     ARGUMENTS AND AUTHORITIES

**A.     Plaintiff cannot establish a *prima facie* case of discrimination under Titles VI or VII of the Civil Rights Act of 1964.**

### 1.     The burden-shifting *McDonnell Douglas* framework applies to Plaintiff's discrimination claims.

As noted, Plaintiff claims that UIW discriminated against her on the basis of her race/color (Colombian), national origin (Colombian-American), sex (female), and religion (Catholic) in violation of VII of the Civil Rights Act of 1964.[3] She also alleges discrimination

---

[3] Plaintiff's pleadings appear to attempt to assert a claim of disability discrimination under Title VII. *See* Plaintiff's Original Complaint, p. 16. However, such a claim is covered by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, not Title VII. As such, this claim is not properly plead and not before the court. Moreover, Plaintiff failed to allege disability discrimination in her charge of discrimination filed with the EEOC and has thus failed to exhaust her administrative remedies on this claim. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 207 (5th Cir. 2016) (noting that under the ADA "a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court") (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)). Consequently, this claim, to the extent that it even exists, must be dismissed as a matter of law.

based on her color, race (Columbian), and national origin (Columbian-American) in violation of Title VI of the same Act.  In cases such as this where the allegation is that the defendant intentionally discriminated against the individual, discrimination can be established either circumstantially or directly.  *See, e.g., Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)).  Plaintiff does not plead any allegations of direct evidence of discrimination — that is, "evidence which if believed proves the fact without inference or presumption."  *Jones*, 427 F.3d at 992-93.  Absent direct evidence, an intentional discrimination claim under Title VI and Title VII is analyzed using the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g., Jacques v. Adelphi Univ.*, No. 10-cv-3076, 2011 WL 6709443, at *2 (E.D.N.Y. Dec. 19, 2011) (applying the *McDonnell Douglas* framework in a Title VI case); *Baldwin v. Univ. of Texas Med. Branch*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) (recognizing that the burden-shifting analytical inquiry into intentional race discrimination claims is essentially the same for § 1981, § 1983, Title VI, and Title VII).

Under this framework, only if Plaintiff is able to establish a *prima facie* case of discrimination does the burden of production shift to UIW to articulate a legitimate, nondiscriminatory reason for its actions.  *See Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (holding that the employer bears only a burden of production, not persuasion, when tendering its nondiscriminatory reason).  Once UIW articulates this legitimate reason, "the presumptions of discrimination dissipates, and [Plaintiff] bears the ultimate burden of persuading the trier of fact that [UIW] engaged in intentional discrimination."  *See Nasti*, 492 F.3d at 593.  Plaintiff must then establish either: (1) UIW's legitimate reason is not true, but a mere pretext for

discrimination (the traditional pretext approach); or (2) although UIW's reason is true, it was only one reason for its conduct and Plaintiff's protected characteristic was a motivating factor in the disputed decision (the mixed motive approach).[4]   *See Autry v. Fort Bend Indep. School Dist.,* 704 F.3d 344, 347 (5th Cir. 2013); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).   But regardless of the claim, the burden of persuasion remains at all times on Plaintiff. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

### 2.   Plaintiff has failed to establish a *prima facie* case of discrimination under Title VI.

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.   In order to state a claim for discrimination under Title VI, Plaintiff must show that the defendant discriminated against her, that the discrimination was intentional, and that the discrimination was a motivating factor for the defendant's actions.   *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).   As a result, a "disparate treatment claim cannot succeed" unless the plaintiff's "protected trait actually played a role in" and had a "determinative influence" on the adverse action.   *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *see also Koumantaros v. City Univ. of New York*, No. 03-cv-10170-GEL, 2007 WL 840115, at *7 (S.D.N.Y. Mar. 19, 2007) ("[T]o be cognizable under Title VI, defendant's discriminatory intent must 'actually play[ ] a role in' and have a 'determinative influence' on the adverse action.")

To establish a *prima facie* case of discrimination under Title VI, Plaintiff must show: "(1) that [s]he is a member of a protected class; (2) that [s]he was qualified for the [program];

---

[4] The mixed motives approach under Title VII only applies if Plaintiff concedes that discrimination was not the sole reason for the alleged discriminatory conduct and instead argues that it was only a motivating factor.   *See Richardson v. Monotronics Int'l, Inc.*, 434 F.3d 327, 333, 335 (5th Cir. 2005).

(3) that [s]he suffered an adverse decision; and (4) that similarly situated non-protected [applicants] were treated more favorably." *See Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006) (citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003)).

Here, Plaintiff has failed to allege any facts establishing the fourth element; that similarly situated non-protected applicants were treated more favorably. In fact, Plaintiff admits that she has no idea how many individuals applied for the program, how many were asked to submit a statement of purpose, how many were granted an interview, or how many individuals were accepted into the program. *See* Exhibit 1, Krowell Depo., pp. 87-88. Moreover, she admits that she has no idea as to the other applicants' genders, races, national origins, or ages. *See* Exhibit 1, Krowell Depo., pp. 88-89. Likewise, she has no idea as to whether the other applicants were asked to submit letters of recommendation or if they had higher or lower grade point averages or GPAs. See Exhibit 1, Krowell Depo., p. 99. These facts alone are sufficient to merit summary judgment for UIW. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 136 (2d Cir. 1997) (granting motion for summary judgment where inference of discrimination urged by the plaintiff was "foreclosed by facts he does not dispute").

Because Plaintiff has no evidence that any similarly-situated applicant was treated more favorably than she, she cannot establish a *prima facie* case of discrimination. As such, summary judgment for UIW is proper.

### 3.   Plaintiff has failed to establish a *prima facie* case of discrimination under Title VII.

Plaintiff makes it abundantly clear in her Complaint that she was seeking admission to UIW as a student and that she was not applying for employment. Therefore, Title VII does not even apply to the present action. But even if Plaintiff's application somehow could be construed as an application for employment, she has failed entirely to establish a *prima facie* case of

discrimination under Title VII.  To establish a *prima facie* case of discrimination based on a failure to hire, Plaintiff must show that (1) she is a member of a protected group; (2) she applied for a job; (3) she was qualified for that job when she applied; (4) she was not selected for the job; and (5) after defendant declined to hire her, the position either remained open or someone outside the protected group was selected to fill it.  *See Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994) (listing elements of failure to hire *prima facie* discrimination; plaintiff alleged Defendant failed to hire her for an open job and hired a male instead).

Common to all of these elements of the *prima facie* case of discrimination is the requirement that Plaintiff be applying for a position of employment with UIW.  Plaintiff here makes no such allegation.  Indeed, the simple fact is that Plaintiff applied to UIW for admission as a student in a graduate level program.  She did not apply for employment, nor was she an employee of UIW, as Plaintiff herself admitted.  *See* Exhibit 1, Krowell Depo., pp. 84-85. Plaintiff's testimony was quite clear on this point:

> Q:    But my question was, you weren't interviewing for an employment position at UIW, were you?
>
> A:    Not to my knowledge.

*See* Exhibit 1, Krowell Depo., p. 84.  Moreover, the application that Plaintiff submitted to UIW plainly states that it was for admission to the UIW School of Graduate Studies and Research, not for a position of employment.  *See* Exhibit 2, Application for Admission dated Apr. 25, 2014. As she further admitted, Plaintiff never even filled out an application for employment with UIW. See Exhibit 1, Krowell Depo., p. 85.  Plaintiff has made no showing that she was qualified for employment, that she was not selected for employment, that UIW declined to hire her, nor that UIW hired anyone else instead of her.

Moreover, even if Plaintiff were to establish that admission to the program was "employment" in some way for Title VII purposes, her discrimination claims again are meritless. Specifically, Plaintiff admits that she has no evidence that any other similarly situated applicant outside of her protected classes was treated more favorably.  In fact, Plaintiff admits that she has no idea how many individuals applied for the program, how many were asked to submit a statement of purpose, how many were granted an interview, or how many individuals were accepted into the program.  *See* Exhibit 1, Krowell Depo., pp. 87-88.  Further, she admitted that she has no idea as to the other applicants' genders, races, national origins, or ages.  *See* Exhibit 1, Krowell Depo., pp. 88-89.  In a moment of candor, Plaintiff admitted that she has no factual basis to compare herself to the other applicants for the program.  *See* Exhibit 1, Krowell Depo., p. 128.  Finally, Plaintiff admitted that neither Dr. Dominguez or Dr. LaFrance made any comments during their interview with her about Plaintiff's age, race, national origin, gender, or religion.[5]  See Exhibit 1, Krowell Depo., pp. 122-23.

Because Plaintiff has failed entirely to establish a *prima facie* case of discrimination under Title VII, summary judgment for UIW is proper and her claim must be dismissed.

**B.      Plaintiff has failed to provide notice as required under the Age Act.**

Section 6102 of the Age Act prohibits discrimination on the basis of age under any program that receives federal financial assistance.  *See* 42 U.S.C. § 6102.  Further, under Section 6104(e)(1) and (2), the plaintiff must comply with statutory notice requirements before beginning a lawsuit.  *See* 42 U.S.C. § 6104(e)(1), (2).  In particular, a plaintiff must provide notice of the action by registered mail to the U.S. Secretary of Health and Human Services, the

---

[5] It should be noted that Plaintiff's complaints of discrimination against UIW are based on the alleged actions of Dr. Dominquez.  *See* Exhibit 1, Krowell Depo., p. 71.  As Plaintiff herself admitted, Dr. Dominquez is older than Plaintiff and shares the same race and ethnicity as Plaintiff.  *See* Exhibit 1, Krowell Depo., pp. 62, 73.  These facts serve to further undermine Plaintiff's claims of discrimination.

U.S. Attorney General, and all "person[s] against whom the action is directed" at least 30 days before commencing an action under the Age Act. *See* 42 U.S.C. § 6104(e)(1). In addition, the notice must set forth the alleged violation of the Age Act, the relief required, the court in which the action shall be brought, and whether attorney's fees will be demanded. *See* 42 U.S.C. § 6104(e)(2).

Although the question does not appear to have been addressed in the Fifth Circuit or in any of its District Courts, several District Courts in other Circuits have recognized that "[a]bsent compliance with these prerequisites, the court lacks subject matter jurisdiction" over claims under the Age Act. *Hilow v. Rome City Sch. Dist.*, No. 91-CV-567, 1994 WL 328625, at *5 (N.D.N.Y. June 29, 1994); *see also Ford v. Garrett Evangelical-Theological Seminary*, No. 13 C 6786, 2013 WL 5587087, at *4 (N.D. Ill. Oct. 10, 2013) (dismissing a claim under the Age Act for a failure to exhaust administrative remedies); *Pramuk v. Purdue Calumet Univ.* No. 2:12-CV-77, 2012 WL 6552920, at *6 (N.D. Ind. Dec. 14, 2012) (dismissing an Age Act claim based on the plaintiff's failure to provide the required notice); *Prete v. Roger Williams Univ. Sch. of Law*, No. 12-CV-474-JL, 2012 WL 6203083, at *5 (D.N.H. Dec. 12, 2012) (dismissing an Age Act claim based on the plaintiff's failure to provide the required notice); *Pullen-Walker v. Roosevelt Univ.*, No. 05 C 5648, 2006 WL 1843364, *6 (N.D. Ill. June 28, 2006) (finding that both the administrative exhaustion and notice requirements must be satisfied for the Court to have jurisdiction); *Curto v. Smith*, 248 F. Supp. 2d 132, 145 (N.D.N.Y. 2003) (noting that under the Age Act the plaintiff must give 30 days' notice to the defendant and that the court lacks subject matter jurisdiction over the suit if the notice is not provided).

Here, there is no evidence that the required notice was ever served upon UIW, the U.S. Secretary of Health and Human Services, or the U.S. Attorney General. In fact, at her

deposition, Plaintiff admitted that she failed to provide the required notice.  *See* Exhibit 1, Krowell Depo., p. 119.  Consequently, the Court lacks subject matter jurisdiction over Plaintiff's Age Act claim and summary judgment for UIW is proper.

WHEREFORE, Defendant the University of the Incarnate Word respectfully requests that this Court grant this Motion for Summary Judgment and for such other and further relief, including attorneys' fees and costs incurred in this case, to which it may be entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ Mario A. Barrera*

Mario A. Barrera
State Bar No. 01805915
mario.barrera@nortonrosefulbright.com
Stephen J. Romero
State Bar No. 24046756
stephen.romero@nortonrosefulbright.com
300 Convent Street, Suite 2100
San Antonio, TX  78205-3792
Telephone:     (210) 224-5575
Facsimile:     (210) 270-7205

Counsel for Defendant
The University of the Incarnate Word

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of January, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Arthur G. Vega
Law Offices of Arthur G. Vega
419 S. Main, Suite 301
San Antonio, Texas 78204


*/s/ Mario A. Barrera*
Mario A. Barrera

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CARMEN KROWELL,                        §
                                       §
        Plaintiff,                     §
                                       §
V.                                     §    CIVIL ACTION NO. SA-15-CA-0638-RP
                                       §
THE UNIVERSITY OF THE INCARNATE        §
WORD,                                  §
                                       §
        Defendant.                     §

**APPENDIX OF EXHIBITS**

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| 1 | Excerpts of Carmen Krowell Deposition dated November 29, 2016 |
| 2 | Application for Admission to University of the Incarnate Word (School of Graduate Studies and Research) dated May 5, 2014 |
| 3 | Declaration of Dr. Daniel Dominguez |
| 4 | Email from Carmen Krowell dated May 14, 2014 |
| 5 | Email chain dated May 29, 2014 |
| 6 | Letter from University of the Incarnate Word to Carmen Krowell dated July 17, 2014 |
| 7 | Email from Dr. Daniel Dominguez dated August 29, 2014 |
| 8 | Letter from United States Department of Education to Carmen Krowell dated January 26, 2015 |
| 9 | Application for Admission to University of Texas at San Antonio Graduate School dated March 17, 2015 |
| 10 | Letter from University of Texas at San Antonio dated April 20, 2015 |