IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARMEN KROWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 5:15-CV-638-RP |
| | § | |
| THE UNIVERSITY OF THE | § | |
| INCARNATE WORD, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is the Motion for Summary Judgment of Defendant The University of the

Incarnate Word ("the University"). (Dkt. 19). Having reviewed the pleadings, factual record, and

relevant law, the Court finds that the University's motion should be granted.

## BACKGROUND

This is an action arising under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et*

*seq.*, and the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–6107.[1] The crux of Plaintiff's claims

is that the University discriminated against her in its admissions process on the basis of her race,

national origin, and age.

Plaintiff is a Colombian-American woman over the age of fifty. She is also a thirty-two-year

veteran of the United States Air Force. Wishing to use her military educational benefits, Plaintiff

applied for admission to the Master of Health Administration ("MHA") program at the University

on May 1, 2014. According to Plaintiff, she exceeded the minimum qualifications required for

admission. Over the next several weeks, Plaintiff remained in contact with Daniel Dominguez

---

[1] Plaintiff also raised claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, but she
has indicated in her briefing that she is waiving those claims.

("Dominguez"), the director of the MHA program, concerning the next steps in the admissions process.

On May 29, 2014, Dominguez invited Plaintiff for an on-campus interview with him and Kevin LaFrance ("LaFrance"), a professor, on June 3, 2014. Plaintiff attended the interview and asserts that she discussed her work with a medical unit in Afghanistan and volunteerism in medical settings. Dominguez allegedly explained that the type of work Plaintiff had performed was not the experience they were looking for. Dominguez also informed Plaintiff that the MHA program required an internship initially requiring a commitment of eight hours per week and later increasing to twenty hours. Plaintiff raised concerns about this requirement, which Plaintiff felt was not adequately disclosed on the University's website and was contrary to the University's representation that the MHA program was geared toward working adults. She further told her interviewers that her work for the military would not permit her to be absent for twenty hours per week. Despite her concerns, Plaintiff alleges that she made it clear that she would do what was necessary to complete the internship. Further, LaFrance allegedly told Plaintiff that her inability to complete the internship would not be a bar to admission.

Plaintiff's Complaint notes some concerns with the interview. For instance, she alleges that Dominguez remarked on the fact that it had been some time since Plaintiff had previously attended school. Plaintiff also asserts that the University was "going through the motions" with the interview, which was between fifteen to twenty minutes long and ended abruptly when Dominguez stated he needed to attend another interview.

On July 29, 2014, Plaintiff was informed by phone that she had not been selected for admission to the University's MHA program. Plaintiff followed up on this phone call with an email to Dominguez requesting to know the reason she was not selected for the program. Dominguez allegedly provided no response before Plaintiff again emailed him on August 27, 2014. In this latter

2

message, Plaintiff reiterated her qualifications for the program, complained that it seemed stacked against working adults, and pointed out that she had attended a higher-ranked school in the past. Dominguez thereafter responded by email that the admissions process is competitive and that, on the whole, Plaintiff's application was not as strong as those of other candidates. Plaintiff responded the same day, complaining of what she felt was poor and unfair treatment in the admissions process.

After seeking administrative remedies, Plaintiff filed this lawsuit against the University. She asserts that she was denied admission to the MHA program on the basis of her race, national origin, gender, and age.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for

the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). The court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters,* 5 F.3d 119, 123 (5th Cir. 1993).

## DISCUSSION

### I.    Age Discrimination

Plaintiff alleges that the University has violated the Age Discrimination Act ("ADA") by denying her admission to the MHA program on the basis of her age. Defendant argues that the Court lacks jurisdiction to hear Plaintiff's claim of age discrimination because Plaintiff has not complied with the ADA's pre-suit notice requirements.

The ADA prohibits any program receiving federal financial assistance from discriminating on the basis of age. 42 U.S.C. § 6102. The ADA allows interested individuals to bring suit against programs that violate its ban on age discrimination. 42 U.S.C. § 6104(e)(1). Before bringing such a suit, however, the individual must give notice by registered mail "not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." *Id.* The notice must state the nature of the alleged violation, the relief requested, the court where the action will be brought, and whether or not the complainant seeks attorney's fees. 42 U.S.C. § 6104(e)(2).

Some courts have found that a failure to comply with the notice requirement leaves the courts without jurisdiction over ADA claims, *see, e.g., Curto v. Smith*, 248 F. Supp. 2d 132, 145 (N.D.N.Y. 2003), but the Fifth Circuit has avoided ruling on the issue. *See Parker v. Bd. of Supervisors Univ. of La.–Lafayette*, 296 F. App'x 414, 418–19 (5th Cir. 2008). Still, the Fifth Circuit's case law is clear that fulfilling § 6104(e)(1)'s notice requirement is an indispensable prerequisite to suit whether or not it affects the court's jurisdiction. *See id.* (affirming dismissal of ADA claims for lack of compliance with notice requirement).

4

Plaintiff has provided no evidence that she has complied with, or attempted to comply with, the ADA's notice requirement. Accordingly, her age discrimination claim is not properly before the Court and summary judgment in favor of the University is appropriate.

## II.    Title VI Claims

Plaintiff alleges that the University violated Title VI of the Civil Rights Act by denying her admission to the MHA program on the basis of her color, race, and national origin as a Colombian-American.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

In cases like the present one, where direct evidence of discrimination is lacking, courts apply the *McDonnell Douglas* burden-shifting framework. *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 810 (S.D. Miss. 2006). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the program; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly situated individuals outside the protected class. *Id.*

The University does not dispute that Plaintiff is a member of a protected class. Nor does the University deny that Plaintiff met the minimum requirements for admission or that that its decision not to admit her constitutes an adverse action under the statute. However, the University argues that Plaintiff has neither alleged nor provided evidence to substantiate that others outside Plaintiff's protected class were treated more favorably than she was. The University points to portions of Plaintiff's deposition in which she states that she "is not privy" to information concerning how many other individuals applied to the University's MHA program, how many were asked to submit

statements of purpose, or how many were interviewed and ultimately admitted. (Krowell Dep., Dkt. 19-1, 87:10–88:2). Plaintiff candidly admitted that she had no information about the applicants' academic credentials or their demographic information, including race, national origin, gender, and age. (*Id.* 88:17–89:7, 99:25-20). Lacking this evidence, the University argues, she cannot show that she was treated less favorably than those outside her protected class.

In response, Plaintiff argues that the University has failed to meet its burden of showing that Plaintiff was less qualified than other applicants. Plaintiff did not present any of the evidence the University claims she lacks, perhaps assuming that such evidence is not required. *See John v. Louisiana (Bd. of Trustees for State Colleges & Univs.)*, 757 F.2d 698, 708 (5th Cir. 1985) ("[T]he nonmovant is under no obligation to respond unless the movant discharges [its] initial burden . . . .").

The Court disagrees with Plaintiff that the University has not met its initial burden. The burden rests with Plaintiff, not the University, to establish that she was treated less favorably than those outside of the protected class. *Vann v. Mattress Firm, Inc.*, 626 F. App'x 522, 525 (5th Cir. 2015) (noting that the burden of proof "remains with the plaintiff at all times" under the *McDonnell Douglas* burden-shifting framework). And "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 322). The University has met its burden by pointing to Plaintiffs concession that she lacked evidence from which disparate treatment could be inferred and asserting that Plaintiff could therefore not prove up her case.

Because the University met its initial burden, it is incumbent upon Plaintiff to present evidence demonstrating a triable issue of fact in order to avoid summary judgment. *Id.* The only document Plaintiff submitted along with her response is a copy of her Complaint. However, it has

long been established that "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968). In light of the absence of competent summary judgment evidence supporting an element of Plaintiff's *prima facie* case, summary judgment in favor of the University on Plaintiff's Title VI claims is appropriate.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the University's Motion for Summary Judgment, (Dkt. 19), and accordingly **DISMISSES** Plaintiff's claims and causes of action asserted against the University in this matter.

**SIGNED** on March 20, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE